Good morning. May it please the Court, Mr. Reiner? My name is Corey Goldensoft. I represent Principal Springer. Mr. Springer pled guilty to conspiracy to distribute cocaine and marijuana as well as possession of a firearm while being an unlawful user and after a conviction of a misdemeanor domestic assault. We had a few issues that we appealed, but I'm going to zero in this morning on the denial of the dismissal with regards to 922G sub 9, the conviction of domestic abuse. First of all, the government argues that the as-applied argument is not preserved, and I would push against that, certainly. In the conditional plea agreement, the government, who actually wrote the conditional plea, says that the parties agree that the one thing that's preserved for appeal is that particular motion. They even pointed to the record document 39, which is the motion to dismiss, and the motion to dismiss does have an argument for dismissal as applied. The Court's ruling is, in my, I would argue, a bit vague as to how they ruled, because early on in the ruling, the Court does say on its face it's denied, but once you get into the actual where the Court's addressing 922G9, the Court talks specifically about Mr. Springer, and so it, I would argue that as-applied is also addressed in the Court's ruling. So I believe that that is true. Scalia. Pages 10 and 11, that's what you're saying? McAllister. Correct. Scalia. And the Section C discussion. McAllister. Correct. And so I would certainly argue that it is preserved. Now, with regards to the merits. Well, I wanted to ask you right off the bat, because we really have to start with the historical analogs, and it jumps out to me, we kind of reviewed all the cases from around the country, that the analogs here come from Rahimi. I think they're almost unanimous that Rahimi provides the analogs, which is the surety laws and the going armed laws. And so how do those not apply, you know, like how do you get around those analogs, your client? McAllister. Sure. Well, I mean, first of all, the surety laws, one thing to note about them is those are a lot more similar to no-contact orders in that they have a limited period of time that they apply. So I believe the surety laws were typically about six months, I don't recall, but there was a limited amount of time that those applied. Same thing with the no-contact order. What we're talking about here with domestic abuse convictions, that's a lifetime ban. You're done. And so that is a huge distinction, because the, I mean, it's not limited. It's just for the rest of your life. And with regards to the going armed law, I think with regards to Rahimi, you need both of them in context. You need them both to sort of make sense of the whole. But with regards to the going armed crimes, they were punishing people who typically carried guns. And that's, I would argue, as applied to Mr. Principal Springer, there is no background that he has that with regards to, at the very least, with domestic abuse. You don't, but I want to get to this, which is, if you look at the going armed laws, and I think that's probably closest here, although the government may disagree, you have a lot of violence in his background. You have a conviction of assault to commit serious injury. You have battery, disorderly conduct relating to fighting in the street, interference with official acts causing bodily injuries. I mean, we're going to have to figure out, most of this, I think, was done without a gun. Do you know if any of these crimes were done with a gun? I mean, there's no record, but we do have the PSI. And nowhere within the PSR does it say anything about a gun, as far as this criminal history is concerned. And so I would say, no, it's not. But I guess the other thing, Judge, would be . . . It was a term of his probationary sentences, though, right? What's that? When he got probation, I bet it was a condition that he did not have a gun, or was it? Absolutely. That would be accurate, Your Honor. And how many probationary sentences does he have? Oh, boy. I know he has the one from the conviction of the mother, the assault on the mother. I don't have that number off the top of my head, Your Honor.  The other thing, to address your question, Judge Strauss, when looking at a person's background with regards to determining whether or not they fit the going armed crimes, do we look at the entire criminal history, or do we just zero in on domestic assaults? Because the domestic assaults charges are the ones that are being . . . Oh, I think you look at everything under the Second Amendment because of the going armed laws. And the hard question is what to do when you don't have a weapon and you commit these crimes. It's a little harder. But I think, for example, going around with a baseball bat and beating . . . I'm not saying he did this here. Beating someone is certainly relevant because if you're given a gun, you might go around and use that as a weapon as well. And so I do think there is relevance to these other crimes as well, given that you don't need a dead ringer to the historical analog. You don't need a dead ringer, but I think what you would . . . I can see your point, but what's barring him isn't some other assault that he's got. So I think when addressing this particular issue for the Second Amendment, I would argue that you need to look at simply his domestic assaults. In any event, from the PSR, we know that there were no guns involved. So I don't believe that the going armed . . . there's no weapons involved. So the going armed crimes don't necessarily apply to Mr. Springer. Well, Counsel, when do we measure? Because he was still on probation, right, when all this happened? Yes. When they searched his home and found guns, is that relevant? And he's not supposed to have guns. Well, he's not supposed to have guns. So I would argue that that's a different issue, like that's obviously a violation of probation. But is there an analog from history that would say that somebody who's on probation also is prohibited, or how does that sort of like fit in? Are we back to bonds when we're to probation? Are we back to surety bonds when we're talking about probation? Perhaps, but I would concede that. However, we're not talking about whether or not somebody who's on probation is barred from possessing a firearm. What we're talking about is somebody who's . . . Convicted. . . . convicted of a domestic assault. Of course, this is part of the conviction. Probation is part of the conviction. Correct. And we look at the facts as applied to his particular situation. Beasley, Cooper, all of these cases from our circuit are clear that it's his particular situation. So the fact that he's on probation has to be relevant, because somebody not on probation presents a different set of circumstances. While I would . . . I mean, that's certainly a thing to take into consideration. I would reserve the rest of my time. I did not see an argument that G-3 as applied is appealed. It's just Beasley on the facial for G-3 as applied that you've argued this morning. Is that right? That's accurate, Your Honor.  Mr. Reiner. May it please the Court, Counsel. I'm Patrick Reiner. I'm an assistant U.S. attorney from Cedar Rapids, Iowa. I did represent the government below as well. And I'll start where Mr. Goldensoft also started on the G-9. Now, he talks about what the plea agreement covered and the language of the plea agreement. But the plea agreement cannot change the Federal Rules of Criminal Procedure. Just can't. And that language, as I recall, the agreement that ultimately was signed was the fifth plea agreement that we had gone through different iterations. And I think that the language he points to about preserving what's in the motion is a vestige of some of the earlier versions because the judge had already ruled by the time he signed the agreement. When you look at . . . But he raised it, right? I mean, he raised the G-9 argument and it's just that the district court didn't actually specifically discuss it. Correct. He raised the G-9. He raised only the facial challenge to G-3. On the G-9, he raised facial and as applied. And looking at the Court's order, you know, at page 2, the Court explicitly says that G-3 doesn't violate the Second Amendment on its face, G-9, nor does G-9. And when you look at, you know, when he points to page 10 of the order, where he discusses proclivity or the inclination that all you need is one conviction, where he's talking about Mr. Springer, that's not doing an as applied analysis. That's simply responding to the defendant's claim that you have to have a pattern of conduct to be a prohibitor. So the only thing that was ruled upon was the as applied. So for purposes of appeal, when you look at, pardon me, when you look at the appeal, all he raised is the G-3 on appeal as facially, which fails under Eighth Circuit law. Under, when you try and get to the G-9, since it really wasn't raised, wasn't resolved by the district court, there's no adverse order to appeal, you really have to do a plain error analysis. Did the district court plainly err in resolving only the G-9 facial challenge without resolving the... We do that only with forfeiture. And so I'm trying to figure out, it just seems to me we can't have forfeiture when somebody raises something and the district court doesn't specifically address it. Because you haven't forfeited anything. You argued it. I think you can forfeit it if you fail to take action to preserve it before you enter a guilty plea. So it needs to be, there needs to be a motion for reconsideration or something of that nature. Had he done a motion for reconsideration, a motion to set it for jury trial, because at the time, the law of the circuit was, you know, to resolve those as applied challenge, you had to have a trial. That, of course, changed last week and we'll talk about that in a minute. But he needed to do something to make sure that that was preserved and he entered the guilty plea, which that motion was already gone, the as applied was already gone because it wasn't resolved. Suppose we disagree with you. Let's just, I mean, we can always apply plain error down the line and we know you're making the argument. Tell me with G-9, do you agree with the historical analogs? This looks an awful lot like Rahimi. So should it be analyzed like Rahimi? Rahimi, I think, gives an awful lot of guidance for resolving the G-9, as does Jackson, because this really is a categoric analysis of people who commit misconduct. You know, in the felony context, you have a category, a wide category that's permanently banned because they've committed felonies. And those are felonies in everything from murder to forgery. Here's the problem with that. It runs into Rahimi. At least, we can leave Jackson and say it's completely correct. And I still don't think it applies here because in some states, not in Iowa, but Minnesota being one of them, you have reduced procedural protections for misdemeanor convictions. And people plead them out all the time. They don't have, for instance, in Minnesota, they don't have a right to counsel. I know that's in the statute, but you don't have a right to counsel unless there's jail time. You have a 6-person jury instead of a 12-person jury. And you remember from Rahimi, the court talked about how important those procedural protections were. And so I just don't think, I think Jackson's just in a different category, given that you have all the procedural protections in a felony. Well, and the reason I talk about Jackson is for a categoric approach. It's really primarily for that concept. In the misdemeanor crimes of domestic violence, they've got to have an assaultive behavior. It is 100% of the folks who commit a misdemeanor crime of domestic violence are violent. Those are violent offenses. And, you know, we've got . . . if I can find my . . . You know, Jackson talks about the categoric approach. Domestic abusers present a really persistent behavior of danger to others. In domestic violence, you know, the Supreme Court's talked about domestic violence as well, how dangerous that is. And really behavior that, you know, someone takes, you know, punches somebody else on the street, stranger, it's a felony. Well, let me . . . I'm going to challenge that. I think you're right that most of these will fail miserably. I mean, these as-applied challenges. But it's not hard to think of one that could work, at least in my mind, because it's a lifetime ban under reduced procedural protections. So, a kid commits domestic abuse with a girlfriend when he's 21 years old, 20 years old. He's now 65 years old. It's 45 years later, and this is a lifetime ban. He pleaded guilty because he couldn't afford a lawyer, and no lawyer was given to him in a state like Minnesota. And so he pleads guilty to domestic abuse. We're now . . . they're now age 65. He has no other convictions. I've got to believe that as-applied challenge. I . . . we always . . . every time we come to argue in front of you, you always ask me a hypothetical, and I always hate hypotheticals because they're way beyond where we're talking about today. But in this particular case . . . Oh, I agree. You know, we've got the full panoply of behavior and, you know, age may be a factor. You know, there . . . we . . . the United States suggests that G-9 is not amenable to both as-applied or on-its-face, simply because Congress is allowed to make categoric decisions. And they're saying in this case where you've got domestic violence, where they've actually been convicted already, found beyond a reasonable doubt that they've actually committed a violent act, so it's actually better than Rahimi in that case because Rahimi's just a, well, we've got to do this whole order that they can't be around someone else, a domestic abuse protection order. So it's stronger than Rahimi in that regard because of the level of violence and danger that the person poses. But you see the point I was making. I mean, they're just . . . cutting off as-applied challenges in this context, I think, poses some difficulties for the fringe cases. Well, and that's where I think the procedural posture that we've presented this case in, you know, judges the courts generally want to resolve on the narrowest grounds possible. And in this case, under Rule 11, there was no adverse decision for the defendant under Rule . . . and it wasn't then appealed under Rule 12. So you really get to plain error on what did the district judge err in not . . . in ruling on it the way he did, and based upon the A-Circuit case law at the time saying you needed to have a jury trial, there was no plain error in ruling on it or plain error in that regard. And looking at the facts of this defendant, the defendant has a 2018 domestic abuse conviction, 2021 . . . you know, and he's engaged in drug trafficking this whole time. He's riding, you know, the record on . . . pardon me, the record on the . . . that would support this even if there weren't as-applied challenges for this defendant. And this is in the present report as well as in the detention hearing transcripts. Driving around with guns at the range with his girlfriend, acquiring more guns, high-capacity magazines, the search sees drugs, guns, firearms. If it is subject to a high . . . to an as-applied challenge, this one would pass muster. Subject to your questions? Thank you. Thank you. Very briefly, I just wanted to comment on the government's referral to Jackson. I would argue that Jackson doesn't apply here. Jackson's talking about a much more broad category of, you know, crimes and whatnot. Felonies is much more broadly based than domestic assault. And I would argue that when looking at analogs, you'd want to be more narrowly tailored with regards to domestic assaults than something as broad as felonies. And if there are no other questions, I would . . . Very good.